UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

KEITH HARRIS, *et ux.*,          )
                                 )
        Plaintiffs,              )          No. 6:25-CV-234-REW-CJS
                                 )
v.                               )
                                 )          OPINION & ORDER
3M COMPANY, *et al.*,            )
                                 )
        Defendants.              )

\*\*\* \*\*\* \*\*\* \*\*\*

Keith and Whitney Harris (collectively, "Plaintiffs") filed a product liability suit against 3M Company ("3M"), Moldex-Metric, Inc. ("Moldex"), Kentucky Mine Supply Company ("KMS"), and Mine Service Company, Inc. ("MSC") (collectively, "Defendants") in Kentucky state court. *See generally* DE 1-3. More than two years later, 3M filed a notice of removal, premised on diversity, with this Court. *See generally* DE 1. 3M alleges that KMS and MSC— Kentucky-based parties—were fraudulently joined and that Plaintiffs litigated against them in bad faith. *See id.* at 6–10, 17–21. Following 3M's notice of removal, Plaintiffs filed a motion to remand and for sanctions to be imposed against 3M. *See* DE 12; *see also* DE 13. In response, 3M reiterated its previous contentions. *See* DE 16. Plaintiffs subsequently filed a reply. *See* DE 19.

The Court declines the invitation to scrutinize whether KMS and MSC were fraudulently joined, as that inquiry is inappropriate given the passage of the applicable one-year removal deadline. More foundationally, the Court declines to find that Plaintiffs have acted in bad faith in order to prevent removal. Accordingly, the Court grants Plaintiffs' request for remand. But because Plaintiffs failed to comply with Rule 11's procedural requirements, the Court denies the sanctions request. As a result, DE 12 is GRANTED, in part. The case is remanded.

## I.   BACKGROUND

On November 16, 2022, Plaintiffs initiated the present action in Kentucky state court. *See generally* DE 1-3. The complaint alleges that Keith Harris—a former coal miner domiciled in Kentucky—suffers from coal workers' pneumoconiosis and/or silicosis. *See id.* ¶¶ 8–10, at 4–5. It further alleges that, while employed as a coal miner, Keith Harris was provided with defective respirators that were produced and manufactured by 3M and Moldex (collectively, "the manufacturer defendants"). *See id.* ¶¶ 11–15, at 5–6. The complaint states that those respirators were distributed to Keith Harris by his employers after being sold to his employers by KMS and MSC (collectively, "the distributor defendants"). *See id.* ¶ 13, at 5. Notably, 3M has impleaded a number of Keith Harris's former employers as third-party defendants. *See* DE 16 at 10–12. Whitney Harris—Keith's spouse—has also joined the action, bringing a loss of consortium claim against Defendants. *See* DE 1-3 ¶¶ 68–74, at 19–20. The parties do not dispute that 3M is incorporated in Delaware with its principal place of business in Minnesota, that Moldex is incorporated in California with its principal place of business in California, and that both KMS and MSC are incorporated in Kentucky with their principal places of business in Kentucky. *See id.* ¶¶ 2–5, at 3–4; DE 1 at 2, 6.

Three additional events are relevant to deciding the present motion. First, MSC filed an answer denying (vaguely, perhaps) Plaintiffs' allegation that it supplied Keith Harris's employers with the allegedly faulty respirators; MSC phrased the denial as "to the extent that [Plaintiffs] allege[d] or infer[red] negligence and/or liability and/or wrongdoing on the part of MSC." *See* DE 19-1 at ¶ 4, at 2. This echoed MSC's separate self-characterization in the answer, where it stated that it "distributed mining supplies some of which, from time-to-time, may have included dust masks . . . manufactured by 3M," but that it "denies all allegations of negligence and/or

2

liability and/or wrongdoing." *See id.* ¶2, at 1. Second, in response to the plaintiffs' interrogatories in *Wilson v. 3M Company* (22-CI-812), a distinct mask case, MSC asserted that: (1) "it sold respiratory protective equipment manufactured by 3M" between 1979 and 2012; (2) "to the best of its recollection it sold mine supplies to Excel Mining, LLC," Keith Harris's employer; and (3) it had "no documents in its possession which would demonstrate whether or not the[] mine supplies included respiratory equipment." *See* DE 13-2 at 1–2, 4–5. Third, on the last day of discovery in the state matter, MSC responded to 3M's requests for admissions and admitted that it never sold respirators to Keith Harris's employers. *See* DE 1-11 at 2–4.

Ultimately, this case was set for trial in state court on September 22, 2025. *See* DE 1 at 5; DE 13 at 1. However, on May 23, 2025—the day that fact discovery concluded and the same day that MSC responded to 3M's requests for admission—3M filed a notice of removal with this Court. *See generally* DE 1. In its notice of removal, 3M alleged that the parties properly joined are completely diverse and that all other requirements for the Court to exercise diversity jurisdiction are satisfied. *See id.* at 5–6. Although the distributor defendants are Kentucky corporations (which would facially defeat complete diversity on account of Plaintiffs' Kentucky citizenship), 3M asserts that they were fraudulently joined and/or joined in bad faith. *See id.* at 6–10, 17–21.

A few days after removal, Plaintiffs filed the instant motion, *see generally* DE 12, along with an accompanying memorandum, *see generally* DE 13. In their motion, Plaintiffs (1) ask the Court to remand the action to state court, arguing that the distributor defendants were not fraudulently joined and that they have not litigated against the distributor defendants in bad faith, *see* DE 13 at 10–15, and (2) request that sanctions be imposed against 3M in accordance with Federal Rule of Civil Procedure 11 on account of 3M's filing of an improper notice of removal, *see id.* at 15–16. Plaintiffs did not file their motion for sanctions separately from their motion for

3

remand, *see generally* DE 12; DE 13, and the record does not indicate that they served the motion on 3M prior to filing it with the Court, *see* DE 16 at 19–20.[1]  In its response, 3M generally reasserts its fraudulent joinder and bad faith claims.  *See id.* at 4–18.  Plaintiffs filed a reply.  *See* DE 19. The matter is ripe for the Court's decision.

II.    STANDARD OF REVIEW

A.  Removal and Federal Jurisdiction

Federal courts are courts of limited jurisdiction, only possessing the power to hear cases upon specific statutory and constitutional authorization.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 114 S. Ct. 1673, 1675 (1994) (citing *Willy v. Coastal Corp.*, 112 S. Ct. 1076, 1080 (1992); *Bender v. Williamsport Area Sch. Dist.*, 106 S. Ct. 1326, 1331 (1986)).  Notably, federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a); *see also* U.S. CONST. art. III, § 2, cl. 1.  Courts have consistently held that "complete diversity" is necessary for diversity jurisdiction, meaning that all plaintiffs must be of diverse citizenship from all defendants.  *See, e.g.*, *U.S. Motors v. Gen. Motors Eur.*, 551 F.3d 420, 423 (6th Cir. 2008).  An individual's citizenship is defined by their place of domicile, i.e., where they reside and intend to remain, *see Mason v. Lockwood, Andrews & Newman, P.C.*, 842 F.3d 383, 390 (6th Cir. 2016) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 109 S. Ct. 1597, 1608 (1989)), while a corporation's citizenship is defined by its principal place of business and the state in which it is incorporated, *see Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1185 (2010) (citing 28 U.S.C. § 1332(c)(1)).

---

[1] Indeed, Plaintiffs fail to dispute this point, or even reference their motion for sanctions, in their reply.  *See generally* DE 19.

4

If a case that was initially filed in state court could have instead been filed in federal court, the defendants may generally remove the case to federal court, *see* 28 U.S.C. § 1441, by collectively filing a "notice of removal" in the particular "district court of the United States for the district and division within which such action is pending," *id.* § 1446(a).  Typically, notice of removal must "be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  *Id.* § 1446(b)(1).  However, if the initial pleading does not suggest that the case is removable, the defendant may remove the action "within thirty days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b)(3).  But even so, a case "may not be removed . . . on the basis of [diversity] jurisdiction . . . more than [one] year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  *Id.* § 1446(c)(1).  This latter timing requirement is a procedural, rather than jurisdictional, limit on removal.  *See Music v. Arrowood Indem. Co.*, 632 F.3d 284, 288 (6th Cir. 2011).  But to be clear, the one-year removal bar is intended to serve as a firm boundary, preventing removal absent a court's specific finding of bad faith.  *See* 28 U.S.C. § 1446(c)(1).

While the Sixth Circuit has not identified a precise method for evaluating the undefined "bad faith" under 28 U.S.C. § 1446(c)(1), jurists in the Eastern District of Kentucky have recognized two principal modes of analysis.[2]  *See, e.g.*, *Williams v. 3M Co.*, No. 7:18-CV-63, 2018

---

[2] It is perhaps more accurate to say that there are five principal modes of analysis, including:  (1) the intentional conduct test; (2) the test outlined in *Aguayo v. AMCO Insurance Co.*, 59 F. Supp. 3d 1225, 1274 (D.N.M. 2014); (3) the test outlined in *Heacock v. Rolling Frito-Lay Sales, LP*, No. 16-CV-829, 2016 WL 4009849, at *3 (W.D. Wash. July 27, 2016), "which requires active litigation to avoid bad faith and considers the timing of naming and dismissing a non-diverse defendant and the explanation for dismissal";

WL 3084710, at *3 (E.D. Ky. June 22, 2018). First, other district courts in the Sixth Circuit have looked to "whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court" in assessing bad faith. *Hiser v. Seay*, No. 5:14-CV-170, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014) (citing *Taylor v. King*, No. 5:12-CV-1, 2012 WL 3257528, at *5 (W.D. Ky. Aug. 8, 2012)); *see also Keller Logistics Grp., Inc. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 777–78 (N.D. Ohio 2019). Second, the District of New Mexico has created a two-part test for assessing bad faith, first looking to "whether the plaintiff[s] actively litigated [their] case against the removal spoiler in state court." *Aguayo*, 59 F. Supp. 3d at 1274. If not, the plaintiffs acted in bad faith; if so, there exists a rebuttable presumption that the plaintiffs acted in good faith. *See id.* at 1228–29. The defendants may rebut that presumption "with evidence already in the[ir] . . . possession, that the plaintiff[s] kept the removal spoiler . . . to defeat removal."[3] *Id.* at 1228. Under either test, the removing party bears the burden of establishing bad faith. *See, e.g.*, *Keller Logistics Grp., Inc.*, 391 F. Supp. 3d at 778 (citing *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000)) ("As for burden of proof, [the defendant], as the removing party, bears the burden of proving bad faith.").

The party seeking removal bears the burden of establishing diversity jurisdiction. *See Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). The removing party

---

(4) a test that is essentially "a combination of *Heacock* and *Aguayo*"; and (5) the test outlined in *Hoyt v. Lane Construction Corp.*, 927 F.3d 287, 292 (5th Cir. 2019), which requires a factor-based assessment of the "evidence against the non-diverse defendant, timing of dismissal, consideration for dismissal, and the manner of litigation against the non-diverse defendant." Tate Cooper, Note, *A Confusing Clarification: How the Bad-Faith Exception in 28 U.S.C. § 1446(c) Costs More than It Is Worth*, 87 MO. L. REV. 1219, 1226 (2022). Nonetheless, the Court declines to evaluate all of these tests, relying solely on the intentional conduct test for reasons detailed below.

[3] This test has been adopted, in whole or in part, in a number of other districts. *See, e.g.*, *Massey v. 21st Century Centennial Ins. Co.*, No. 2:17-CV-1922, 2017 WL 3261419, at *4 (S.D. W. Va. July 31, 2017); *Bristol v. Ford Motor. Co.*, No. 4:16-CV-1649, 2016 WL 6277198, at *4 (E.D. Mo. Oct. 27, 2016); *Shorraw v. Bell*, No. 4:15-CV-3998, 2016 WL 3586675, at *6 (D.S.C. July 5, 2016).

must also "demonstrat[e] strict compliance with the statutory procedural requirements, including the timing directives outlined in § 1446." *Sizemore v. Auto-Owners Ins. Co.*, 457 F. Supp. 3d 585, 589 (E.D. Ky. 2020) (citing *Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993); *Zipline Logistics, LLC v. Powers & Stinson, Inc.*, No. 2:15-CV-693, 2015 WL 4465323, at *5 (S.D. Ohio July 21, 2015); *May v. Johnson Controls, Inc.*, 440 F. Supp. 2d 879, 882 (W.D. Tenn. 2006); *Groesbeck Invs., Inc. v. Smith*, 224 F. Supp. 2d 1144, 1148 (E.D. Mich. 2002)). Given the fact that removal necessarily encroaches on state court jurisdiction, the pertinent statutory provisions should be construed strictly in the interests of comity and federalism. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 61 S. Ct. 868, 872 (1941)). Specifically, "federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of [§ 1446's requirements] should be resolved in favor of remand to the state courts." *Id.*

### B. Federal Rule of Civil Procedure 11

Under Federal Rule of Civil Procedure 11(b), an attorney's presentation of a pleading to the Court amounts to a certification—to the best of that attorney's knowledge, information, and belief after conducting a reasonable inquiry—that: (1) the pleading "is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) any "claims, defenses, and other legal contentions" contained in the pleading "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; (3) the pleading's "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"; and (4) any "denials of factual contentions"

included in the pleading "are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

A party may move for sanctions to be imposed against opposing counsel for violating Rule 11(b), so long as the motion is "made separately from any other motion and . . . describe[s] the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11(c)(2). Notably, a motion for sanctions "must be served . . . , but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* Other jurists in the Eastern District of Kentucky have found that a party's improper notice of removal can amount to "unnecessary delay" under Rule 11(b)(1) and may therefore warrant sanctions. *See, e.g.*, *Ayos v. TRG Holdings G & H, LLC*, No. 6:23-CV-12, 2023 WL 4280808, at *6–7 (E.D. Ky. June 14, 2023), *R. & R. adopted*, 2023 WL 4274951 (E.D. Ky. June 23, 2023) ("The conduct at issue—the intentional filing of a meritless notice of removal—disturbs 'the orderly and expeditious disposition of cases.' . . . Courts enjoy inherent authority to impose sanctions for such conduct, including an assessment of attorney's fees." (quoting *Chambers v. NASCO, Inc.*, 111 S. Ct. 2123, 2135 (1991))).

The Sixth Circuit has recognized that "[t]he conduct of counsel who are the subject of a sanction request is measured by an objective standard of reasonableness under the circumstances." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citing *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987)). In determining whether the imposition of sanctions is appropriate, the Court must "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to

8

believe at the time the pleading, motion, or other paper was submitted." *Id.* (quoting *INVST Fin. Grp., Inc.*, 815 F.2d at 401).

### III.   ANALYSIS

#### A. 3M Has Failed to Demonstrate that Plaintiffs Litigated Against the Distributor Defendants in Bad Faith

The parties do not dispute that Plaintiffs are diverse from the manufacturer defendants, that the citizenship of the third-party employer defendants is irrelevant to whether the Court can exercise jurisdiction over this case, or that the amount in controversy exceeds $75,000. They only disagree as to whether the distributor defendants were properly joined. *See generally* DE 1; DE 13; DE 16; DE 19. The Court begins by addressing—and ultimately, declining to consider—3M's claim that the distributor defendants were fraudulently joined. It then considers and rejects 3M's argument that Plaintiffs litigated against MSC in bad faith.

#### 1.   The fraudulent joinder inquiry is inappropriate at this stage of the proceeding

Despite 3M's position to the contrary, the Court does not agree that fraudulent joinder equates to bad faith and is sufficient to overcome § 1446(c)(1). To be sure, the judicially created fraudulent joinder doctrine *can* be used to overcome the complete diversity requirement. *See Hoskins v. 3M Co.*, Nos. 6:17-CV-304 & 7:18-CV-9, 2018 WL 1040091, at *2 (E.D. Ky. Feb. 23, 2018); *see also Williams*, 2018 WL 3084710, at *3 (citing *Larue v. Volkswagen Grp. of Am., Inc.*, No. 1:17-CV-1, 2017 WL 2312480, at *6 (W.D. Ky. May 26, 2017)). To do so, a removing party typically must establish that "the non-removing party join[ed] a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999)).

However, the Court is faced with a different inquiry at this juncture, given the passage of the one-year removal deadline.

Per the explicit terms of § 1446(c)(1), 3M may not—at this point in the proceeding—seek removal based on the Court's diversity jurisdiction unless Plaintiffs have "acted in bad faith in order to prevent [it] from removing the action." The text admits of later (post one-year) removal only for specified bad faith. 3M's fraudulent joinder argument thus relies on the implicit premise that fraudulent joinder is sufficient to establish bad faith. But other jurists in the Eastern District of Kentucky have consistently recognized that the term "fraudulent joinder" is itself a misnomer, as it "does not require any showing of improper motive or fraud." *See, e.g.*, *Madden v. Berea Healthcare, LLC*, No. 5:23-CV-223, 2023 WL 8654369, at *2 (E.D. Ky. Dec. 14, 2023) (citing *Shawver v. Bradford Square Nursing, LLC*, No. 3:09-CV-2, 2009 WL 971463 (E.D. Ky. Apr. 9, 2009)). In conducting a fraudulent joinder inquiry, the relevant question is objective, asking only "'whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved' against that defendant." *Id.* (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). In the Court's view, "bad faith" necessarily implies the existence of some "[d]ishonesty of belief, purpose, or motive" that is simply absent from that analysis. *Bad Faith*, BLACK'S LAW DICTIONARY (12th ed. 2024). To be sure, a plaintiff's fraudulent joinder of a non-diverse defendant can provide *some* evidence of bad faith. But the Court will not conclude that a finding of fraudulent joinder, on its own, satisfies § 1446(c)(1). The section requires that the plaintiff "has acted in bad faith in order to prevent" removal, which is language of purpose and intent.

In reaching this conclusion, the Court joins an array of other courts that have voiced similar concerns when faced with litigants' attempts to equate fraudulent joinder to bad faith. *See, e.g.*,

10

*Ranchod v. AIG Prop. Cas. Co.*, No. 23-CV-1642, 2024 WL 489541, at *6 (W.D. Wash. Feb. 7, 2024); *McAdam Props., LLC v. Dunkin' Donuts Franchising, LLC*, 290 F. Supp. 3d 1279, 1288–92 (N.D. Ala. 2018); *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014). Of course, the Court recognizes that other jurists might reasonably disagree with its conclusion. *See, e.g.*, *Hoyt*, 927 F.3d at 295–97; *Aguayo*, 59 F. Supp. 3d at 1255–57. But ultimately, the explicit and mandatory language of § 1446(c)(1) convinces the Court that it has reached the proper result. Given the passage of the one-year removal deadline, the Court will not consider 3M's argument that the distributor defendants were fraudulently joined.

### 2. Plaintiffs did not act in bad faith in order to thwart removal under the intentional conduct test

While courts have articulated a variety of tests for evaluating bad faith under § 1446(c)(1), this Court, having looked at many options, joins other district courts within the Sixth Circuit in concluding that the intentional conduct test is the most appropriate. And because Plaintiffs have not litigated against MSC in bad faith, the Court orders remand without reaching the question of whether Plaintiffs have litigated against KMS in bad faith.

As stated above, bad faith generally requires "[d]ishonesty of belief, purpose, or motive." *Bad Faith*, BLACK'S LAW DICTIONARY (12th ed. 2024). 3M has offered no persuasive reason for the Court to interpret the phrase "bad faith," as it is used in § 1446(c)(1), differently from that definition. Moreover, the statutory context suggests that Congress intended a less expansive definition of bad faith than the one 3M proposes. *See, e.g.*, *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."); *Brierly*, 184 F.3d at 534.

11

Although discerning congressional intent can often prove difficult, the Court finds textual guidance in § 1446(c)(3)(B), which Congress enacted alongside § 1446(c)(1)'s bad faith exception. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103, 125 Stat. 758, 760 (codified at 28 U.S.C. § 1446). That provision specifies that if a "plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith," thereby permitting removal even after the one-year time bar. 28 U.S.C. § 1446(c)(3)(B). Congress's decision to equate bad faith with a plaintiff's deliberate failure to disclose information strongly signals a conception of bad faith grounded in dishonesty of belief, purpose, or motive.

Consistent with that understanding, bad faith must require some evidence of improper intent—namely, "intentional conduct to deny the defendant the chance to remove the case to federal court." *See Hiser*, 2014 WL 6885433, at *4 (citing *Taylor*, 2012 WL 3257528, at *5). For that reason, the Court declines to apply the *Aguayo* test or any of its variations. In the Court's judgment, the intentional conduct test most faithfully reflects the text of § 1446(c)(1) and Congress's intent in enacting the provision.

But did Plaintiffs act in bad faith under that test? That is, did they make intentional efforts solely to deny 3M the opportunity to remove the case? The complaint alleges that MSC "supplied, distributed, and/or sold" the manufacturer defendants' allegedly faulty respirators to Keith Harris's employers, *see* DE 1-3 ¶¶ 11–13, at 5, a fact that creates potential liability under Kentucky law.[4]

---

[4] Although not in dispute, it is worth mentioning why Kentucky law is the applicable substantive law. A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *See Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 435 (6th Cir. 2017). Kentucky courts apply the "any significant contacts" test in tort actions. *See Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). Pursuant to that test, "any significant contact with Kentucky [i]s sufficient to allow Kentucky law to be applied." *Id.* (quoting *Bonnlander v. Leader Nat'l Ins.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996)). Because Plaintiffs were allegedly injured in Kentucky, and are currently domiciled in Kentucky, the "any significant contacts"

*See Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003)) ("The elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages."); *Primal Vintage Co. v. O'Bryan*, 677 S.W.3d 228, 245 (Ky. 2022) ("Both the negligence and strict-liability theories of recovery require the plaintiff to prove that the product was defective and was the legal cause of the injury."). 3M, however, relies on MSC's admissions that it did not sell respirators to Keith Harris's employers. *See* DE 1-12. Specifically, it argues the admissions conclusively establish that MSC could not have caused Plaintiffs' injuries, and thus, conclusively establish that MSC is not liable to Plaintiffs. *See* KY. R. CIV. P. 36.02 ("Any matter admitted under Rule 36 is conclusively established . . . ."). The seeming implication of 3M's position is that MSC's lack of liability proves that its joinder was designed to intentionally thwart federal jurisdiction. However, 3M's argument is unconvincing for at least two reasons.

First, even accepting MSC's admissions at face value, the record does not indicate that Plaintiffs named MSC for the specific purpose of preventing removal. Instead, the record suggests that Plaintiffs reasonably believed MSC might be liable. When confronted with the allegations in the complaint, MSC filed an equivocal answer denying Plaintiffs' claims only "to the extent that they allege[d] or infer[red] negligence and/or liability and/or wrongdoing on the part of MSC." *See* DE 19-1 ¶ 4, at 2. That is not the kind of full-throated denial that would have reasonably alerted Plaintiffs to the fact that MSC did not sell respirators to Keith Harris's employers. MSC's responses to interrogatories in the parallel case likewise failed to dispel the potential of liability. Harris alleged he used employer-supplied 3M respirators. MSC acknowledged that it sold 3M

---

test is assuredly met. *Cf. Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 145 n.8 (Ky. 2009) (applying Kentucky law because plaintiff was domiciled in Kentucky and his injuries arose out of the defendant's contacts with Kentucky).

13

respirators during Keith Harris's employment as a coal miner, that it sold mine supplies to Keith Harris's employer, and that it lacked documentation indicating whether or not those mine supplies included respirators. *See* DE 13-2 at 1–2, 4–5. Those responses did little, if anything, to clarify MSC's role. Accordingly, MSC's later responses to 3M's requests for admission—which arose, with alacrity, at discovery's close—do little to establish that Plaintiffs intentionally pursued their claims against MSC to prevent removal.[5]

Second, the Court rejects the notion that MSC's admissions negate the merits of Plaintiffs' claims. 3M is correct that, under Kentucky law, admitted matters are conclusively established. *See* KY. R. CIV. P. 36.02. But those admissions are only binding against the party that makes them, and 3M cannot rely on MSC's admissions to its own co-party requests to prove Plaintiffs' bad faith. *See Berrier v. Bizer*, 57 S.W.3d 271, 278 (Ky. 2001). Kentucky courts have recognized that Kentucky Rule of Civil Procedure 36.02 "is substantially the same" as Federal Rule of Civil Procedure 36, and as a result, they "may look to federal cases for guidance in this area." *Burns-Mahanes v. Loeb*, No. 2004-CA-2195-MR, 2005 WL 2241043, at *3 (Ky. Ct. App. Sept. 16, 2005). When addressing analogous situations, federal courts have consistently found that a party's admissions cannot be used to conclusively establish a fact against a separate party. *See, e.g.*, *Kittrick v. GAF Corp.*, 125 F.R.D. 103, 106 (M.D. Pa. 1989) ("[T]he court believes that plaintiffs' admissions cannot bind [a] third-party plaintiff."); *Riberglass, Inc. v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566 (11th Cir. 1987) ("[T]he deemed admissions of his codefendants cannot bind

---

[5] The Court has no doubt that the distributor defendants' Kentucky citizenship was a relevant consideration when Plaintiffs were crafting the complaint. But that fact does not satisfy the intentional conduct test. In a world of limited federal jurisdiction, comity, and protection of a plaintiff's complaint mastery, plaintiffs are permitted great latitude in drafting their complaints. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014). And the mere "use of strategy to defeat federal jurisdiction does not constitute bad faith." *Johnson v. HCR Manorcare LLC*, No. 1:15-CV-185, 2015 WL 6511301, at *4 (N.D. W. Va. Oct. 28, 2025) (citing *Ramirez v. Johnson & Johnson*, No. 2:15-CV-9131, 2015 WL 4665809, at *3 (S.D.W. Va. Aug. 6, 2015)).

Morris . . . ."); *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Deemed admissions by a party opponent cannot be used against a co-party."). The Court sees no reason to depart from that principle when applying Rule 36.02, particularly given the obvious absurdity of resolving a plaintiff's claims based solely on admissions shared between co-defendants with an apparent joint interest. The admissions, as to Plaintiffs and the merits, are a nullity.

In fairness to 3M, the Court acknowledges that Plaintiffs have made little effort to pursue discovery against the distributor defendants. However, that fact, in this context and on this record, does not establish the type of intentional conduct necessary to prove bad faith under § 1446(c)(1). *See Hiser*, 2014 WL 6885433, at *4 (citing *Taylor*, 2012 WL 3257528, at *5). Although such inaction is not ideal, the Court declines to treat active litigation as the cornerstone of its bad faith analysis. Instead of treating it as "a bright-line indicator of bad faith, a plaintiff's failure to litigate is more properly construed as one potential factor among many." *H&B Ventures, LLC v. State Auto Prop. & Cas. Ins. Co.*, 686 F. Supp. 3d 846, 851 (E.D. Mo. 2023). Plaintiffs are able to point to information generated in companion litigation and an opinion—regarding distributor liability— by a putative expert. The pursuit of MSC has not been vigorous, but the Court does not find that Plaintiffs acted in bad faith in order to block removal.[6] Plaintiffs began with a colorable claim and nothing in the record negates such claim against MSC, an entity that has remained a party to the current procedural end. In short, 3M has not shown that Plaintiffs have acted in bad faith in order to prevent removal by 3M. Remand is therefore warranted.

---

[6] Interestingly, this is not a situation where a plaintiff acted post-deadline (e.g., dropping parties or entering nominal settlements) in a manner indicative of bad faith. Here, the distributor defendants did not even seek merits relief from the state court. And as to the failure to join Lowe's, Plaintiffs offer a rational distinction in their viewpoint of that seller versus the mining specific distribution entities. *See* DE 13 at 8.

15

### B.  Rule 11 Sanctions Are Unwarranted

The Court will not impose sanctions against 3M, as Plaintiffs failed to comply with Rule 11's procedural mandates.  They did not file their motion for sanctions separately from their motion for remand, *see Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 766 (6th Cir. 2014) (emphasizing that strict compliance with Rule 11's procedural requirements is necessary and highlighting that "[a] motion for sanctions must be made separately from any other motion" (quoting FED. R. CIV. P. 11(c)(2))), or provide 3M with 21 days to correct its error as required by the safe harbor provision, *see Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997) ("Because Springfield did not comply with the [21] day 'safe harbor' procedural prerequisite before filing its motion for Rule 11 sanctions, the award of sanctions under Rule 11 was improper.").  The Court denies sanctions on account of these failures.

### IV.   CONCLUSION

For the above-stated reasons, the Court GRANTS DE 12, in part.  While no sanctions will be imposed against 3M, the Court REMANDS the case to state court.

This the 17th day of March, 2026.

Signed By:
*Robert E. Wier*  REW
**United States District Judge**

16